# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **RHONDA DENISE REID,**<br><br>*Plaintiff,*<br>v.<br><br>**CANDACE LAWSON,** *et al.,*<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:20-cv-00077-TES** |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Rhonda Reid filed her Second Amended Complaint[1] on April 1, 2020. [Doc. 12]. Collectively, the Complaint and its exhibits number more than 200 pages in length. Ms. Reid names 12 defendants and raises claims for violation of her civil rights, personal injury, defamation, slander, and discrimination. The claims are mostly related to her attempt to purchase a BMW from Butler Ford Honda, Inc. ("Butler") in December of 2019. She alleges that several defendants violated her rights and defamed her character in January and February of 2020, specifically during the time she filed bankruptcy, which happened concurrently with Butler's repossession process when financing fell through on the vehicle. *See* Section III(A), *infra*. However, Ms. Reid's lengthy Complaint also contains grievances from seemingly unrelated events dating back as far as 2002,

---

[1] All references to the Complaint refer to this version of Ms. Reid's Complaint. [Doc. 12].

including custody of her children, alleged assaults, and her previous arrest and criminal conviction. She seeks hundreds of millions in damages for these alleged harms but provides no details regarding the nature of her injuries or their relation to the amount she wants to recover. [Doc. 12].

Seven of the Defendants have been dismissed pursuant to Federal Rule of Civil Procedure Rule 4(m). [Doc. 31]. The five remaining defendants have filed motions to dismiss: one filed by Defendant Hope [Doc. 15]; one filed jointly by Defendants Lawson, Harrison, and Ogletree [Doc. 17]; and one filed by Defendant Massee [Doc. 18]. The Court now considers these motions concurrently, and, for the reasons more fully discussed below, the Court **GRANTS** all three motions and **DISMISSES** this case.

I.    **FACTUAL SUMMARY**

   A.    **Events Occurring in 2019 and 2020**

On or about December 20, 2019, Ms. Reid tried to purchase a BMW from Butler. She successfully reached a sale agreement with Butler and left the lot with the vehicle, knowing that she still owed payments on it. [Doc. 12-1 at p. 7]. She was "suppose[d] to put [$ 2,500] down" on the vehicle by January 3, 2020; however, the financing plan went awry in late December and early January, and she "decide[d] to file bankruptcy" instead to "protect" herself. [*Id*. at p. 8]. She filed for bankruptcy on January 6, 2020. [*Id.*]; [Doc. 17-2].

On January 13, 2020, a Butler employee went to Defendant Lawson, the Greene County (Georgia) Tax Commissioner, to cancel the registration on the vehicle. [Doc. 12-1 at p. 9]. Defendant Lawson canceled the vehicle's registration without telling Ms. Reid and again refused to issue Ms. Reid a tag when Ms. Reid went to the tag office after learning that her tag had been canceled. [Doc. 12-1 at pp. 9-10, 16]. Ms. Reid claims that Defendant Lawson's decision to revoke the car's registration, as well as other instances of alleged canceled tags without her knowledge over many years, are violations of her civil rights. *See, e.g.*, [Doc. 12-1 at pp. 11, 33].

Ms. Reid also alleges Defendant Lawson (and others who are not party to this action) used racial slurs to describe her and made statements that were "defamations of character" in which they claimed Ms. Reid stole the vehicle from Butler; she claims to have rebutted their story by producing pictures from December 20, 2019, that supported her version of events, at which point Defendant Lawson and the others changed their allegations to claim that Ms. Reid "test drove the car and never came back." [Doc. 12-1, pp. 4, 7–9, 12, 25, 28].

Overall, Ms. Reid claims that these actions put her "at harm," were "dangerous" to her, threatened her current probation status, and amount to conduct that "should violate [Ms. Lawson's] oath of office." [Doc. 12-1 at p. 2]. She goes so far as to state "[A]ll these lies jeopardize my life and my family['s] li[ves]." [Doc. 12-1 at p. 20]. She claims repeatedly that the allegations that she stole the vehicle could have resulted in

3

criminal proceedings before Defendant Judge Ogletree; however, of note, there is no evidence in the record that the above-described events have led to any *actual* arrest or criminal proceedings. *See generally* [Doc. 12].

She has filed a civil suit against Defendant Lawson and others in Baldwin County State Court, Civil Case No. STCV2020006058, based on allegations substantially similar to those outlined in the preceding paragraphs. [Doc. 12-1 at pp. 20, 26]; [Doc. 17-4]. Ms. Reid asserts that the Greene County Sheriff, Defendant Harrison, "violate[d] [her] right[s] by not serving Ms. Lawson" in a state court action Ms. Reid filed in February even though she had paid the service fee of $50.00. [Doc. 12- 1 at pp. 13, 16, 26, 30].

Furthermore, Ms. Reid alleges that Defendant Hope, the bankruptcy trustee, failed to give proper notice of the bankruptcy proceedings to Butler because "she was giving Butler time to harass [Ms. Reid]." [Doc. 12-1 at p. 22]. Ms. Reid further alleges that the delay was due to her race and notice would have been given more quickly if she were "the other Race [*sic*]." [Doc. 12-1 at p. 24]. She claims that Defendant Hope improperly scheduled the February 25, 2020 court date; however, that hearing was canceled, as Ms. Reid voluntarily dismissed her bankruptcy case on February 24, 2020. [Doc. 12-1 at p. 27]; [Doc. 12-10]. Ms. Reid also alleges that the "Bankruptcy Trustee allowed Mrs. Lawson and Mr. Edward to use those Racial remarks." [Doc. 12-1 at p. 23]; [Doc. 12-10].

4

B.     **Events Occurring Prior to 2018**

In addition to her claims surrounding the attempted purchase of the car and her bankruptcy proceedings, Ms. Reid has also dispersed many references to other alleged violations of her rights dating as far back as 2002 throughout her Complaint. *See generally* [Doc. 12].

i.     **Ms. Reid's Prior Criminal Proceeding**

In this action, Ms. Reid appears to challenge the validity of her 2008 arrest and 2012 conviction for racketeering, for which she was given a 20-year sentence and is currently serving the probation portion of her sentence for that conviction. [Doc. 12-1 at pp. 11, 35–38]; [Doc. 12-3 at pp. 2-5]; [Doc. 12-4 at p. 2]. She claims that there was no warrant for her arrest. *See, e.g.*, [Doc. 12-7 at p. 2]. In conjunction with that challenge, she claims that Defendant Lawson: falsely claimed Ms. Reid filed fraudulent tax returns in 2007 and 2017; violated the stay on Ms. Reid's bankruptcy; violated Ms. Reid's right to vote in elections; and deprived Ms. Reid of her liberty. [Doc. 12-1 at pp. 14, 33]; [Doc. 12-5 at pp. 2–3]; [Doc. 12-9 at p. 2]. Ms. Reid also alleges that Sheriff Donnie Harrison and the Greene County Sheriff Department "write false police reports in other branches of governments names . . . ," which contributed to her allegedly invalid conviction in 2012. [Doc. 12 at p. 2]. She alleges throughout the document that her 2012 conviction was invalid for a myriad of reasons. *See generally* [Doc. 12].

5

### ii.     Ms. Reid's Children

Ms. Reid alleges that, in January 2003, Defendant Lawson and the Greene County Sheriff Department committed "human trafficking" of her children who were "stolen" from her "at gunpoint" and put into foster care. [Doc. 12-1 at p. 15; [Doc. 12-7 at p. 2]. The children were placed back in her custody in August 2013. [Doc. 12-7 at p. 14–15]

### iii.    Attempt to Obtain Restraining Order

Ms. Reid alleges that "[t]he City of Greensboro Police Departm[ent] allowed Mrs. Jackson to shoot at me on March 5, 2004…and she tried to run me off the road…they refuse to help me again…" [Doc. 12-1 at p. 17]. Ms. Reid states that Judge Ogletree "refuse[d] to give [her] a restraining order against the Elected Official Mrs. Deborah Jackson." [*Id*.]. She also claims that both Judge Ogletree and Sheriff Harrison would not assist her by issuing a warrant for Defendant Jackson in 2002 when she allegedly "jump[ed] on [Ms. Reid] in the courthouse" without cause. [Doc. 12-7].

## II.    STANDARDS OF REVIEW

### A.    *Pro Se* Pleadings

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be

construed so as to do justice.") However, this Circuit has clarified that this "liberal construction" standard "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Lowe v. Delta Air Lines Inc.*, 730 F. App'x 724, 728 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 431 (2018) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Furthermore, even a *pro se* litigant must adhere to the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

**B.    Subject-Matter Jurisdiction**

Because federal courts are courts of limited jurisdiction, they are obligated to inquire into their own jurisdiction. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999). Therefore, the Court conducts its own inquiry in addition to considering the arguments raised in Defendants' motions.

i.    **Original Jurisdiction**

Subject-matter jurisdiction in federal court can be established through one of three alternatives: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Hallett v. Ohio*, 711 F. App'x 949 (11th Cir. 2017) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists where the parties are

citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

> ii. **Supplemental Jurisdiction**

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In fact, the general view of this Circuit is that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Ingram,* 167 F. App'x 107, 108 (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir.1997)). "When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court." *Ingram,* 167 F. App'x 107, 109 (quoting *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

C. **Sufficiency of Claims (Rule 12(b)(6) Standard)**

These five defendants seek to dismiss Plaintiff's action against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion,

district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555.

"To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the

10

complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## III. DISCUSSION

The Court finds Ms. Reid's Complaint, even when "liberally construed," fails to adequately provide the required "short and plain statement[s]" that are "more than unadorned, the-defendant-unlawfully-harmed-me accusations" to explain why her matter is properly before this Court and why she is entitled to relief. *See Erickson*, 551 U.S. at 94; *McCullough*, 907 F.3d at 1333; *Moon*, 863 F.2d at 837; Fed. R. Civ. P. 8(a)(2). In fact, the Court finds that the plethora of pages in Ms. Reid's Complaint contain no more than the "naked assertions devoid of further factual enhancement" that do not survive against motions to dismiss. *See* Section II(C) *supra*; [Doc. 12].

The Court finds that the vast majority of statements in Ms. Reid's Complaint are "no more than mere conclusions" which are not entitled to presumption of truth. *Iqbal*, 556 U.S. at 679. Thus, upon disregarding the myriad of conclusory allegations, the remaining factual allegations simply do not "plausibly give rise to an entitlement to relief" because they fail to provide sufficient facts to demonstrate she has endured violation of her civil rights, personal injury, defamation, slander, or discrimination. *Id*; [Doc. 12]. Thus, Ms. Reid's Complaint, as a whole, fails to state a claim for which relief can be granted; however, the Court, in an abundance of caution, also notes additional considerations made in finding that Defendants' motions are properly granted.

### A.     <u>Claims Arising from Events Prior to 2018</u>

Ms. Reid has previously attempted to bring claims in federal court alleging violation of her rights in relation to her prior criminal proceedings. *Reid v. Republic Bank & Tr. Inc*, 805 F. App'x 915, 916 (11th Cir. 2020). The Eleventh Circuit held conclusively that "[T]he 'facts which would support' [Ms.] Reid's claims . . . all of which concern her 2008 arrest and subsequent trial—would have been apparent to her by, at the latest, sometime in 2012, and those claims fall outside of the statute of limitations for § 1983 claims. *Id*. (citing *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636 (11th Cir. 1990)) ("The expiration of the statute of limitations serves as an affirmative defense, the existence of which warrants a dismissal as frivolous.").

Thus, the Court finds that even *if* Ms. Reid's claims for injuries that occurred prior to 2018 had been pled sufficiently, they are time-barred by the two-year statute of limitations, including claims related to her criminal proceedings,[2] claims regarding custody of her children, the denial of her requested restraining order, etc. *See, e.g.*, *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003); O.C.G.A. § 9-3-33.

---

[2] In light of the Eleventh Circuit's concise reasoning, this Court also dismisses these claims as time-barred. However, the Court notes that Ms. Reid's claims would also fail because she has no cause of action because of other legal doctrines. *See generally Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) ("It is well-established that the "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.") (quoting *Heck v. Humphrey*, 512 U.S. 447 (1994)); *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018) (finding that the *Rooker–Feldman* doctrine limits the jurisdiction of district courts to prevent them from hearing "what are essentially appeals from state court decisions" because only the United States Supreme Court has jurisdiction to hear such cases) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Accordingly, the Court **DISMISSES** all claims against Defendants Lawson, Harrison, Ogletree, and Massee related to events that occurred prior to 2018 not only for failure to state a claim upon which relief can be granted, but also as frivolous and time-barred.

B.  **Claims Arising from Events not Outside the Statute of Limitations**

  i.  **Claims Against Defendant Hope**

Even *if* the Court were to find that Ms. Reid's allegations against Defendant Hope were sufficient, the claims against Defendant Hope are not properly before this Court. Long ago, the United States Supreme Court established the *Barton* Doctrine, which states that "[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (quoting *Barton v. Barbour*, 104 U.S. 126, 127 (1881)). In *Carter*, the Eleventh Circuit specifically held that the *Barton* Doctrine applies to bankruptcy courts. *Carter*, 220 F.3d at 1252. ("[A] debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity."). Therefore, because there is nothing in the record to show that Ms. Reid sought and obtained leave of the bankruptcy court before initiating this action, the Court does not currently have subject matter jurisdiction to hear the claims against Defendant Hope.

13

Furthermore, even *if* the Court had jurisdiction to hear the claims against Defendant Hope, the law is clear that a bankruptcy trustee is not responsible for providing notice to collectors. *See generally* 11 U.S.C. §1302; Fed. R. Bankr. P. 2002. Thus, any claim that Defendant Hope failed to provide timely notice is simply without merit (as is the argument that the delay was due to racial discrimination) because Defendant Hope had no duty to communicate Ms. Reid's bankruptcy status to Butler. *Id.* As to her assertion that Defendant Hope somehow improperly scheduled the February 25, 2020 hearing in her bankruptcy case, it is a conclusory statement with no details to support the assertion. Ms. Reid also fails to explain what harm she supposedly suffered due to the scheduling of the hearing.

Accordingly, the Court **GRANTS** Defendant Hope's motion [Doc. 15] and **DISMISSES** all claims against her for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction.

### ii. Claims Against Defendant Harrison

The Court finds that Ms. Reid's claims against Defendant Harrison are bare and conclusory, centering around Ms. Reid's apparent dissatisfaction regarding service of process in the state-court action she has filed against Defendant Lawson and others. She does not state a claim against Defendant Harrison in his individual capacity; likewise,

she does not even remotely state facts sufficient to overcome qualified immunity,[3] much less to pass the "extremely rigorous" assessment to hold supervisors liable for actions of their subordinates. *See generally Gainor v. Douglas Cty.*, 59 F. Supp. 2d 1259, 1290 (N.D. Ga. 1998); *Braddy v. Florida Dep't of Labor and Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Accordingly, the Court **DISMISSES** all claims against Defendant Harrison for failure to state a claim upon which relief can be granted.

### iii.     Claims Against Defendant Judge Ogletree

The Court finds that Ms. Reid has stated no claims against Judge Ogletree arising from events within the statute of limitations but has merely speculated that she *may* have appeared before Judge Ogletree *if* had she been arrested. In addition, all mentions of Judge Ogletree refer to actions made in her official capacity and any claims arising from those actions are barred by judicial immunity. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("Judges are entitled to absolute judicial immunity from damages for those actions while acting in their judicial capacity unless they acted in the clear absence

---

[3] Because the Court dismisses Ms. Reid's claims against Defendant Harrison for failure to state a claim, it does not conduct a full qualified immunity analysis; however, the Court notes, that as argued in Defendants' Motion to Dismiss, [Doc. 17], even if Ms. Reid had properly stated a claim, Defendant Harrison is likely entitled to qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Toole v. City of Atlanta*, 798 F. App'x 381 (11th Cir. 2019) (quoting *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012)). Specifically, Plaintiff has failed to allege any facts to show (1) exactly which statutory or constitutional right the Defendants allegedly violated *and* (2) that the allegedly violated right was "clearly established." *Skop*, 485 F.3d 1130, 1137; *see also Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906 (11th Cir. 2015).

of all jurisdiction."). Accordingly, the Court **DISMISSES** all claims against Defendant Judge Ogletree.

### iv.     Claims Against Defendant Lawson

By Ms. Reid's own account, Defendant Lawson denied her vehicle registration due to disagreement regarding ownership status of the vehicle (not because she was in bankruptcy). *See generally* 11 U.S.C. § 525(a); [Doc. 12]. Therefore, the Court construes the claims raised against Defendant Lawson regarding vehicle registration as state law claims brought against Defendant in her official capacity. Thus, even *if* Ms. Reid's allegations were sufficient, they would still be barred both by the doctrine of sovereign immunity[4] and by this Circuit's policy that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Ingram*, 167 F. App'x 107, 108 (quoting *Baggett*, 117 F.3d at 1353); *see also* Section II(B)(ii), *supra*. The Court also declines to exercise supplemental jurisdiction over the defamation claims, which, as pled, do not demonstrate "defamation 'plus' the violation of some more tangible interest" which is required "before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Paul*

---

[4] "The doctrine of sovereign immunity applies 'to the state and all of its departments and agencies,' including counties, '[a]nd county officers sued in their official capacities-since a suit against a county officer in her official capacity *is* a suit against the county itself-enjoy the same sovereign immunity.' This immunity 'can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.'" *Raw Properties, Inc. v. Lawson*, 783 S.E.2d 161, 163 (Ga. Ct. App. 2016) (internal citations omitted); *see also* Ga. Const. of 1983, Art. I, Sec. II., Par. IX (e).

*v. Davis*, 424 U.S. 693 (1976); *see also Siegert v. Gilley,* 500 U.S. 226, 233, (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").

Accordingly, the Court **DISMISSES** all claims against Defendant Lawson for failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction. *See generally* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1367(c)(3).

### v.   Claims Against Defendant Massee

Ms. Reid's allegation that an unidentified Baldwin County deputy called her and made threats does not state a claim against Defendant Massee in his individual capacity nor does it state any facts which would even begin to override qualified immunity,[5] much less pass the "extremely rigorous" assessment that would be required to hold Defendant Massee liable for actions of the Department's deputies. *See generally Gainor*, 59 F. Supp. 2d 1259; *Braddy*, 133 F.3d 797. Accordingly, the Court **GRANTS** Defendant Massee's Motion [Doc. 18] and **DISMISSES** all claims against him for failure to state a claim upon which relief can be granted.

## IV.   CONCLUSION

The Court **GRANTS** Defendant Hope's Motion to Dismiss, [Doc. 15], and **DISMISSES** all Ms. Reid's claims against her for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction.  *See generally* Fed. R. Civ.

---

[5] *See* n.3, *supra*; [Doc. 18].

P. 12(b)(6); 28 U.S.C. § 1367(c)(3). The Court **GRANTS** the joint Motion to Dismiss, [Doc. 17], of Defendants Lawson, Harrison, and Judge Ogletree and **DISMISSES** all claims against them for failure to state a claim upon which relief can be granted and such other grounds as outlined in Section III, *supra*. *See generally* Fed. R. Civ. P. 12(b)(6). The Court **GRANTS** Defendant Massee's Motion to Dismiss, [Doc. 18], and **DISMISSES** all Ms. Reid's claims against him for failure to state a claim upon which relief can be granted and such other grounds as outlined in Section III, *supra*. *See generally* Fed. R. Civ. P. 12(b)(6). Accordingly, the Court **DIRECTS the Clerk of Court to terminate Defendants Hope, Lawson, Harrison, Massee, and Judge Ogletree and CLOSE this case**.

      **SO ORDERED**, this 16th day of June, 2020.

                                                s/Tilman E. Self, III
                                                **TILMAN E. SELF, III, JUDGE**
                                                **UNITED STATES DISTRICT COURT**